GREG BURKE
1475 Island Avenue #2311
SAN DIEGO, CA 92101
858-829-8979
GREGBURKE02@GMAIL.COM
Plaintiff In Pro Per

**FILED**

Feb 15 2024

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY      s/ GloriaVocal      DEPUTY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

Greg Burke,                          ) Case:  **'24 CV 0182 WQHBGS**
　　　　　PLAINTIFF              )
                                     ) COMPLAINT
V.                                   )
                                     )
CITY OF SAN DIEGO                    )
STATE OF CALIFORNIA                  )
UNITED STATES OF AMERICA             )

_____

I.      RELATED CASES

　　A) 37-2022-00037743 -PO-CTL (SAN DIEGO SUPERIOR COURT, CENTRAL (2022)

II.     STATEMENT OF CLAIM:  (SEE BELOW)

BURKE VS. CITY OF SAN DIEGO, STATE OF CALIFORNIA, PAGE 1

The matters in this case arose during the Black Lives Matters protests and riots at which time the resident living directly below the Plaintiff in downtown San Diego began setting off improvised explosive devices in the form of 'pressure bombs' which were detonating a very short distance of 10-15 feet from (Plaintiff's) bed with only the floor in between.  The impacts were strong enough to shake the building for 2-3 seconds.  Plaintiff did not know what these explosions were at the time. When the Plaintiff reported this to 911, it appeared that the reports were not taken seriously, either because 911 operators didn't believe that an explosion could be going off without having multiple reports from different people, or they did not understand the severity of the accompanying  force of a concussive blast.   Rather than immediately sending out Police to investigate, 911 operators asked if there was a fire.   Since there did not appear to be any accompanying fire, no response occurred.   Approximately 1 week later, after multiple reports had been made due to the continuing explosions,  whatever was going off in the apartment below then did cause a fire, as Plaintiff then had smoke entering his unit after another blast.  Plaintiff again called 911, this time reporting that there was a fire,  and San Diego Fire Emergency breached the unit below and found that the individual was placing sealed, pressurized metal cans of chemicals on the stove and heating them up to the point of detonation.   The occupant had apparently refused to open the door after multiple building security checks based on the Plaintiff's report to them.   Plaintiff was informed of the chemical explosives by security after the fire, with whom he had been in contact with regarding the ongoing matter with up to that point.

According to the emergency fire report which Plaintiff only later obtained over one year later with a court ordered subpoena, "cans of chemicals were on the stovetop burners" and the

occupant was placed on a 5150 Psychiatric hold for danger to self and others.  As per the timing and frequency of the explosions, Plaintiff assumes that the occupant had additional cans of chemicals "on deck" on  the stovetop burners ready to be heated up again when the responders breached the apartment.  At that time the explosions were occuring every 3-4 hours, causing the Plaintiff additional harm and distress once the effects had begun to wear off from the previous impact.

Approximately 1 month after the fire, the explosions started again and Plaintiff once again contacted 911 emergency, this time informing them of the previous fire incident.   Plaintiff was again asked if there was a fire.   After multiple incidents and reports Plaintiff was finally contacted by San Diego Police accompanied by a "PERT" response team.  At that time Plaintiff expected  911 and Police to have a history of the incidents and all he  had been going through up to that point, but it appeared that Police had no knowledge of the prior incidents, despite approximately 10-12 reports having been made over the past 5 weeks, including the fire incident.  During the Police interaction Plaintiff informed them of the prior history and that improvised explosive devices were found in the last fire incident and that the occupant had already been apprehended on a  5150 Psychiatric hold.  Upon stating this to Police, Plaintiff  was responded to with the statement that there was no record of any prior arrest or apprehension of the occupant for the fire incident.  This was during the Black Lives Matter protests and Plaintiff received the impression that there was some bias going on in that the individual living in the unit below was a black individual and there was heavy media coverage at the time of people and businesses placing signs in their windows expressing solidarity with the BLM movement.  At the time of the Police interaction, Plaintiff was astounded by the Police lack of response being that there was now direct evidence corroborating what he had been experiencing.

Government Code Section 815 was implemented to provide Police with the flexibility to act in the field when "proper discretion is shown" and does not give Police the right to violate laws or fail to uphold their mandatory duties, such as that found in Welfare and Institutions code 5150.05 which states that all information and history must be taken into account.  Plaintiff alleges this was clear negligence and a failure to uphold mandatory duties and that discretion was not shown in this case, most likely under the false pretense that the system could be manipulated, as it later turned out to be by utilizing Government Code 815 in a manner that is not prescribed by law, and that furthermore, it was most likely believed that the matter would not be brought to light and that the acting City of San Diego agents would not be held to account for their actions.

As Plaintiff had already confronted the individual multiple times, due to nothing having been done by San Diego Police, he was left in a position where he would have had to take matters into his own hands as the explosions continued on a regular basis, again, originating directly below his place of rest and causing him severe harm.   Plaintiff ended up having to move out of his residence to protect himself as by that time he was beginning to suffer from anxiety attacks consisting of involuntary muscle contractions and/or seizures commonly associated with the Traumatic brain injuries resulting from being in close proximity to the concussive force resulting from similar explosive devices experienced by military personel in combat situations.   The explosions, once again, were strong enough to shake the entire frame of the building for several seconds and were originating a short distance away from Plaintiff's bed/ place of rest with only the floor in between. After relocating away from the individual/explosions, Plaintiff was intent on putting the matter behind him but when the seizures continued even after moving out, a claim was filed with San Diego Risk Management to address the injury that resulted in the lack of police

response.  The claim was denied several months later leading to a complaint being filed in  San

Diego Superior Court ( 37-2022-00037743-CU-PO-CTL, San Diego Superior Court, Central)

Plaintiff then subpoened San Diego Fire/Emergency for the Emergency Report associated with the

buiding fire which confirmed the initial security reports that  'cans of chemicals were being heated

up on the stove' as stated by building security at the time.   Again, this specific information

contained in the emergency fire response report was denied by responding Police and the

accompanying PERT response team.  Plaintiff alleges that this amounts to negligence and the

concealment of evidence.

Upon case filing in San Diego Superior Court, City of San Diego responded with a Demurrer citing

government immunity under (815) as previously stated.    During this time, some of the case

information in a similar case, called  "Heitmann vs. City of San Diego" was made public in the local

news, stating that the Plaintiffs in (Heitmann) were accusing the City of San Diego of Negligence

due to the fact that they "did not take all information into account" (in violation of Welfare and

Institutions Code 5150)  when they were asked to place (Heitmann) on a 5150 due to what they

described as "manic behavior".  At the time of the Police interaction, Heitmann was not committing

any violent acts and the Police stated the criteria for placing him on an involuntary 5150 Hold was

not met.  Heitmann later committed violent acts causing severe injury, that being the subject of the

(Heitmann) case.   The Heitmann attorneys cited that San Diego Police had a mandatory and not

discretionary duty to "take all information into account" and that by not doing so, they had not

fulfilled their mandatory  duties as per Welfare and Institutions code 5150.05 and this was the

cause of the acts later committed by Heitmann.   San Diego Superior Court found in favor of the

Plaintiff and  overuled the City of San Diego's Demurrer and City of San Diego then settled with the

Heitmann Plaintiff for ($6,000,000).   It should also be noted that the specific statutes that were cited in the Heitmann media news article as the 'statutory law' that eventually resulted in the Court's overruling of the City's demurrer were later redacted and or removed from the internet.   The same article originally showing the statutory laws being cited have been edited with those sections being permanently removed from the article.     Plaintiff alleges that this shows that there was an attempt to conceal this information from the Public, possibly at the request of the Heitmann attorney's and/or other interested parties, as this could possibly be used as a precedent for holding Police more accountable in other cases such as the Plaintiff's.  A later news article articulating the 6 million dollar settlement states that Police failed to apprehend Heitmann after being informed by a Psychiatrist that he needed medical care.  This is despite the fact that Police were actually alerted to his behavior by a neighbor who happened to also be a psychiatric professional and that Heitmann at the time did not meet the criteria for being apprehended on a 5150 Psychiatric hold by threatening violence, committing violent acts, or being a danger to himself or others.   Despite this, the news article describes the settlement as being the result of the Police's failure to take action after recieving some type of official report from a medical psychiatric professional that would otherwise legally give them the right under current laws to apprehend Heitmann and place him on a 5150 Psychiatric hold against his will even though he did not meet the legal criteria for that action to take place.

This information came to light shortly before the scheduled demurrer motion hearing for Burke vs. City of San Diego, and the same statutes were cited in Plaintiff's case, stating that it was a mandatory and not discretionary duty for San Diego Police to take all information into account

and that this duty was not met when they falsely stated there was no record of the prior fire incident

including the discovery of chemical explosives being detonated.  To clarify, Plaintiff alleges that

despite the fact that there was direct evidence in the prior emergency report that improvised

explosive devices were being detonated, a violent act placing the Plaintiff in danger, City of San

Diego agents illegally disregarded the Plaintiff by simply denying the existence of the prior

documented history, most likely under the assumption that the matter would not be brought under

the court's scrutiny.   Despite this, San Diego Superior Court sustained the demurrer in Plaintiff's

case while overruling it in the Heitmann case even though the criteria *was* met for police

intervention in Plaintiff's case, while it *was not* met in the Heitmann case.   In Burke vs. City of San

Diego, the perpetrator in question was committing violent acts  by setting off improvised explosive

devices in close proximity to the Plaintiff, was a danger to self and others, and there was a

documented history of the reports of this activity taking place.  This was denied by Police in an act

of evidence concealment, and the acts were allowed to continue resulting in severe life changing

injury  to the Plaintiff.   Despite this, San Diego Superior Court sustained the demurrer based on

Government Code 815.   In Heitmann vs City of San Diego, unlike in Burke vs. City of San Diego,

the perpetrator did not meet the legal precedents for being apprehended on a 5150 Psychiatric Hold

at the time the police were called to the scene, but the Government Code 815 based demurrer was

overruled (apparently) because the person reporting that the individual required medical evaluation

happened to be a Psychiatrist (a neighbor).   This is despite the fact that the information provided

to the Police by the Psychiatric professional  did not contain the needed information required to

legally apprehend Heitmann on a 5150 Psychiatric hold, as he was not a danger to self or others at

the time and was not engaged in or threatening to engage in violent acts.   By sustaining the

demurrer in Burke vs. City of San Diego based on Government Immunity Code 815 when the

criteria was met for mandatory police action and overruling the demurrer in Heitmann vs. City of

San Diego when the criteria was *not* met for mandatory police action, San Diego Superior Court

has violated Plaintiff Burke's Constitutionally granted civil right to  equal protection under the law.

By acting in this manner when this information was specifically brought to the Court's attention, as

shown below, San Diego Superior Court has demonstrated that it believes that high profile cases

can be abjucated in one manner while cases unknown to the public can be abjucated in a

completely different manner, and one in which the civil rights of certain individuals are violated, in

this case, Plaintiff Burke.

During the Demurrer Hearing, the Judge stated that he had not yet reviewed Plaintiff's additional

Memorandum of Points and Authorities showing the specific Welfare and Institutions  statutes

holding the City of San Diego liable for their failure to uphold their mandatory (and not discretionary)

duties as according to Section 5150.05 of the Welfare and Institutions Code.   However, the

Honorable Judge Gregory Pollack requested that the additional documents be submitted for him

for review during the hearing.  It appeared during the hearing that he either did not read the 3 page

brief, or ignored it, as immediately after requesting the unread Memorandum of Points and

Authorities, he then ruled in favor of CIty of San Diego, stating that Plaintiff  had failed to cite any

statutes and that the complaint could not be fixed, thus sustaining the demurrer.   These statutes

were listed in that Memorandum of Points and Authorities, which is found on file in that case.

Plaintiff alleges that not only were his civil right to equal protection under the law violated, but that a

mistake was made when Judge Pollack 1) stated that there was no statutory

authority to substantiate the Plaintiff's complaint, 2) acknowledged the existence of the then

unreviewed "Memorandum of Points and Authorities" pointed out by Plaintiff which had been filed

approximately 10 days before the hearing (which included a request for the Court's acceptance of

the late filed documents due to the fact that the cited case information had just come to light), 3)

Requested that the clerk bring him the Memorandum of Points and Authorities for his immediate

review, and finally, 4) instead of actually reviewing the document at that time, immediately basically

cut the Plaintiff short by immediately sustaining City of San Diego's demurrer by again stating that

the complaint was not subtantiated with any statutory authority (which was cited in the still unread

Memorandum of Points and Authorities).

As a result of these issues, Plaintiff has suffered a Traumatic Brain Injury and suffers frequent

seizures that have not subsided after 3 years since the initial incidents.   Plaintiff's life has been

detrimentally effected, and medical documentation showing this is also included here.

According to medical professionals, "Brain health and the effect of concussive force originating from

explosive impacts is a developing field of study."  This means that the force generated from

explosive devices causes neurological harm even when it is not accompanied by burn and/or

shrapnel damage that is traditionally associated with the harm caused by explosives.   It appears

that the lack of general knowledge in this field has  contributed to the negligent acts committed in

this case.  In a study done on veterans who had been exposed to these concussive forces in

combat situations it was found that individuals who had suffered concussive damage from

explosions originating within their close proximity were effected in the following manner:  "Every

aspect of their life is affected, from sleep to diet, nutrition, their interaction with the world around

them, loved ones...(an individual who has experienced this type of trauma) they're always on edge

Their heart rate is up, waiting for that saber tooth tiger to kind of jump on their back" (Dr.

Christopher Romig, Stella Center of Orange County).  Despite this, when Plaintiff Burke explained

to 911 operators and Police that he was being harmed by these concussive explosions taking place

within his close proximity, no action was taken to prevent this continued violent behavior.

Points and Authorities:

5150.05. (a) When determining if probable cause exists to take a person into custody, or cause a

person to be taken into custody, pursuant to Section 5150, any person who is authorized to take

that person, or cause that person to be taken into custody pursuant to that section shall consider

available relevant information about the historical course of the person's mental disorder if the

authorized person determines that the information has a reasonable bearing on the determination

as to whether the person is a danger to others, or to himself or herself, or is gravely disabled as a

result of the mental disorder.

This means that it was a mandatory and not discretionary duty of City of San Diego Police Officers

to take the prior documented and substantiated history of the prior incidents into account.   The

statute specifically states "shall consider", not "may consider, or take into consideration".   By

denying the existence of the prior substantiated evidence and history to essentially disregard the

Plaintiff (again, most likely under the assumption that the matter would never be brought to the

Court's attention, or if it did that it could be again disregarded under the false pretense of Section

815 blanket immunity), City of San Diego breached *mandatory* and not *discretionary* duties to

protect the Plaintiff from the violent and harmful acts of the individual who had been previously

detained on a 5150 Psychiatric hold for danger to self and others.

Plaintiff continuously stated to 911 operators and Police the history of the individual, his continued use of Improvised Explosive Devices, the resulting fire, the proof of these allegations which were in the emergency reports and the harmful effects it was having on him.  By failing to review the history of this individual, and furthermore, stating that there was no history, City of San Diego failed to fulfil its *mandatory, not discretionary* duties to take all information into account when determining what course of action to take and whether the individual in question was a danger to himself and/or the Plaintiff, as stated in 5150.05 of the Welfare and Instituations Code.

Furthermore, Judge Gregory Pollack has infringed upon the Plaintiff's right to Equal Protection under Federal law (14th Amendment) when it found in favor of the Heitmann Plaintiff in overuling the City of San Diego Demurrer while sustaining the City of San Diego's demurrer in Plaintiff's case.  This point is (exemplified) by the fact that the individual in question in the Heitmann case was not currently engaged in any violent, harmful and/or dangerous activity at the time of the Police interaction whereas in the Plaintiff's case, there was proof of past and current violent activity taking place, which City of San Diego chose to ignore, presumably under the assumption that the information would never be brought to light, as it was not a high profile case.

III. Relief Requested:

Plaintiff Greg Laurence Burke is not only a law abiding citizen, but an exemplary one.   He has always supported San Diego Police in whatever way he could and has never engaged in or had any desire to engage in any law breaking actiivities or any activities which would cause additional difficulties for San Diego Police or his fellow citizens.   Mr. Burke has been the

recipient of several citizenship awards, including being the American Legion Golden State delegate for California an award based on leadership and good citizenship. At the time of the incident, due to general unrest and a housing shortage, Mr. Burke housed himself in a small studio apartment in downtown San Diego, taking up only as much space as he physically required. He also went out of his way to help and assist people whom he came into contact with, as he has experience as a motivational speaker and personal life coach. Mr. Burke has also always kept a strict fitness regime, taking care of his physical body, mind and spirit with proper diet, nutrition, exercise and meditation. Although there was no immediate apparent injury from the initial explosive blasts, his continued frequent exposure to the massive concussive force generated by the detonation of the sealed metal cans of chemicals as found in the emergency report eventually resulted in the onset of seizures in the form of involuntary muscle contractions in his lower back and posterior region, disrupting his life and causing him anxiety and a loss of quality of life. These symptoms are commonly associated with Traumatic Brain Injuries and are also experienced by military personal who are exposed to concussive blasts in combat situations. Mr. Burke continues to experience these symptoms in 2024, approximately 2 years after moving out of the affected apartment. The explosions felt like possibly a hand grenade going off directly beneath his bed and place of rest and were strong enough to shake the entire frame of the building for 2-3 seconds similar to a strong earthquake, and these took place at regular intervals when he was asleep or trying to go to sleep and in a relaxed unguarded state. Mr. Burke has been prescribed seizure medication called Gabapentin and this medicine has side effects which further diminish his quality of life. Mr. Burke now frequently wakes up in an extremely tense state, with his lower back and posterior region

"locked" in a contracted position.  The symptoms come on whenever he is trying to relax at home and also whenever going out in public.  This has driven him to avoid the public and become reclusive.   Medical documentation is also included here showing that Mr. Burke's physicians have concluded that he should not go to his normal group fitness activities due to the onset of symptoms caused by the explosive blasts.    These types of symptoms have also been found in research studies on individuals who have suffered Traumatic Brain Injuries or "TBI's" in combat situations from similar concussive forces originating from improvised explosive devices in the field, as stated in the complaint.   Mr. Burke's quality of life has been severely effected as a result of the allowing of these explosions to continue in his close proximity on a regular basis over  a period of several months and the failure of the City of San Diego to follow their mandatory duties to intervene in mentally ill indivduals who are a danger to themselves or others as per WIC 5150.05. . As also stated in the Heitmann case, Mr. Burke is also a member of the class of people which these laws were designed to protect.

Mr. Burke has been further effected emotionally by seeing how he has been blatantly discriminated against by San Diego Superior Court when it overruled the City of San Diego Heitmann demurrer while sustaining the demurrer on the same grounds in Burke vs. City of San Diego. Mr. Burke also believes that due to the fact that he does not have the correct "victim profile" as a white male, that he has been unable to procure legal representation and that this further exemplifies the injustice and corruption taking place in today's legal landscape.   Mr. Burke also believes that there was an attempt to conceal the legal basis which was stated in the Heitmann case on some level, as  the statutes cited in the media article were later redacted and/or edited out a short time after their initial

publication in the article "Wrong way Driver Goes to Trial" originally published on the San Diego

KFMB News 8 website.   Mr. Burke believes it is the Court's responsibillity to call out this unequal

treatment of a high profile case and an unknown case where blatant mishandling and/or concealing

of evidence occurred.  It is understandable for City of San Diego and its agent's to question whether

the reported activity was taking place when it was not reported by anyone else.   But after it was

again reported after undeniable evidence of the activity was found, to then simply shrug off or deny

the existence of stated evidence is an unmistakable breach of mandatory duty as per WIC 5150.05

which states that all information must be taken into account).   Furthermore it was this exact statute

that was cited in the Heitmann case, in that instance stating that City of San Diego Police and PERT

response team did not do enough when the reported information did not meet the legal requisites

for Police involvement (i.e. posing a danger to others or self or engaging in violent activity).     To

overrule the demurrer in the high profile Heitmann case where there actually was no legal basis for

police mandatory intervention and then sustain the demurrer in Burke vs. City of San Diego where

there was undeniable evidence of violent dangerous activity taking place requiring mandatory and

not discretionary Police intervention as per Section 5150.05 of the Welfare and Instituations Code,

Plaintiff alleges, is  an unmistakable violation of Plaintiff's civil rights under the United States

Consitution which provides that citizens are entitled to equal protection and treatment under the

law.  It was this negligent response and mishandling and/or concealment of evidence which allowed

the activity to continue ultimately causing severe neurological harm to the Plaintiff and resulting in

the diminished quality of life that he now experiences.

Due to the physical neurological damage sustained due to City of San Diego's negligent Police

response, failure to conduct their mandatory duties under WIC 5150.05 and the associated mental

anguish that Plaintiff now suffers from, Plaintiff asks for right and just damages in the amount of

(Unlimited, over $10,000) as relief for his diminished quality of life, and future potential earnings.

Government Code 815.6 states that:

Where a public entity is under a mandatory duty imposed by an enactment that is designed to

protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind

proximately caused by its failure to discharge the duty unless the public entity establishes that it

exercised reasonable diligence to discharge the duty.

I hereby swear on Februrary 14, 2024 in the State of California that the foregoing is true and correct.


_____

Greg Laurence Burke,
Plaintiff in Pro Se

BURKE VS. CITY OF SAN DIEGO, STATE OF CALIFORNIA, PAGE 15