1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

11

SOUTHERN DISTRICT OF CALIFORNIA

12
13    GREG BURKE,                                    Case No.:  24-cv-00182-WQH-DTF

14                                   Plaintiff,      **ORDER**

15    v.

16    CITY OF SAN DIEGO; STATE
      OF CALIFORNIA; and UNITED
17    STATES OF AMERICA,

18                                   Defendants.

19

20    HAYES, Judge:

21    **I.      BACKGROUND**

22           On February 15, 2024, Plaintiff Greg Burke ("Plaintiff"), proceeding pro se, initiated

23    this action by filing a Complaint. (ECF No. 1.) The same day, Plaintiff filed an Application

24    to Proceed In Forma Pauperis ("IFP") (ECF No. 2) and a Request for Appointment of

25    Counsel (ECF No. 3).

26           On April 4, 2024, the Court issued an Order denying Plaintiff's Application to

27    Proceed IFP. (ECF No. 4.)

28           On May 1, 2024, Plaintiff filed a renewed Application to Proceed IFP. (ECF No. 6.)

1

1  **II.     APPLICATIOIN TO PROCEED IFP**

2        All parties instituting a civil action in a district court of the United States, other than

3  a petition for writ of habeas corpus, must pay a filing fee of $405. *See* 28 U.S.C. § 1914(a);

4  S.D. Cal. CivLR 4.5. An action may proceed despite a party's failure to pay only if the

5  party is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Rodriguez v.*

6  *Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). "To proceed in forma pauperis is a privilege

7  not a right." *Smart v. Heinze*, 347 F.2d 114, 116 (9th Cir. 1965). "An affidavit in support

8  of an IFP application is sufficient where it alleges that the affiant cannot pay the court costs

9  and still afford the necessities of life." *Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th

10  Cir. 2015). "[A] plaintiff seeking IFP status must allege poverty 'with some particularity,

11  definiteness and certainty.'" *Id.* (quoting *United States v. McQuade*, 647 F.2d 938, 940 (9th

12  Cir. 1981)).

13        In Plaintiff's Application to Proceed IFP, Plaintiff states that his total monthly

14  income is $1,202.92, and that his total monthly expenses, including rent/home-mortgage

15  payment, utilities, food, clothing, transportation, recreation, insurance, and credit card

16  payments, is $1,201.00. (ECF No. 6 at 1–5.) Based on Plaintiff's representations, the Court

17  finds that Plaintiff cannot afford to pay the filing fee in this case. Plaintiff's Application to

18  Proceed IFP is granted pursuant to 28 U.S.C. § 1915(a).

19  **III.    REQUEST FOR APPOINTMENT OF COUNSEL**

20        Plaintiff requests that the Court appoint counsel because he has "spent considerable

21  time in contacting various attorneys to assist [him] with [his] case," and "[i]n each instance,

22  [he] has been declined assistance." (ECF No. 3 at 2.) However, there is no constitutional

23  right to counsel in a civil case. *See Lassiter v. Dept. of Social Servs.*, 452 U.S. 18, 25 (1981).

24  While district courts have some limited discretion to "request" that an attorney represent

25  an indigent civil litigant, this discretion may only be exercised under "exceptional

26  circumstances." *Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004); *see*

27  *also Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). A finding of exceptional

28  circumstances requires "an evaluation of the likelihood of the plaintiff's success on the

1  merits and an evaluation of the plaintiff's ability to articulate his claims 'in light of the

2  complexity of the legal issues involved.'" *Agyeman*, 390 F.3d at 1103 (quoting *Wilborn v.*

3  *Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)). In weighing the relevant factors in this

4  case, the Court finds that there are no exceptional circumstances warranting appointment

5  of counsel in this matter at this time. Plaintiff's Request for Appointment of Counsel is

6  denied.

7  **IV.    SUA SPONTE SCREENING**

8       **A. Legal Standard**

9       Because Plaintiff is proceeding IFP, his Complaint requires a pre-answer screening

10  pursuant to 28 U.S.C. § 1915(e)(2). Under this statute, the Court must sua sponte dismiss

11  an IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim,

12  or seeks damages from defendants who are immune. *See Williams v. King*, 875 F.3d 500,

13  502 (9th Cir. 2017). "The purpose of [screening] is 'to ensure that the targets of frivolous

14  or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d

15  903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d

16  680, 681 (7th Cir. 2012)).

17       "The standard for determining whether a plaintiff has failed to state a claim upon

18  which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of

19  Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d

20  1108, 1112 (9th Cir. 2012). Federal Rules of Civil Procedure 8 and 12(b)(6) require a

21  complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief

22  that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal

23  quotations omitted). Detailed factual allegations are not required, but "[t]hreadbare recitals

24  of the elements of a cause of action, supported by mere conclusory statements, do not

25  suffice." *Id.* "Determining whether a complaint states a plausible claim for relief [is] ... a

26  context-specific task that requires the reviewing court to draw on its judicial experience

27  and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the

28  defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility

1    standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

2    However, "courts must construe pro se pleadings liberally." *Resnick v. Hayes*, 213 F.3d

3    443, 447 (9th Cir. 2000).

4        **B. Allegations of the Complaint**

5        "The matters in this case arose during the Black Lives Matter[] protests and riots at

6    which time the resident living directly below the Plaintiff in downtown San Diego began

7    setting off improvised explosive devices in the form of 'pressure bombs.'" (ECF No. 1 at

8    2.) These "pressure bombs" were detonated "10-15 feet from (Plaintiff's) bed with only

9    the floor in between." *Id.* "The impacts were strong enough to shake the building for 2-3

10   seconds." *Id.* "Plaintiff did not know what these explosions were at the time." *Id.*

11       Plaintiff called 911 to report the blasts, but "it appeared that the reports were not

12   taken seriously[.]" *Id.* "Rather than immediately sending out [p]olice to investigate, 911

13   operators asked if there was a fire," and since "there did not appear to be any accompanying

14   fire, no response occurred." *Id.*

15       "Approximately [one] week later, after multiple reports had been made due to the

16   continuing explosions, whatever was going off in the apartment below then did cause a

17   fire, as Plaintiff then had smoke entering his unit after another blast." *Id.* "Plaintiff again

18   called 911, this time reporting there was a fire, and San Diego Fire Emergency breached

19   the unit below and found that the individual was placing sealed, pressurized metal cans of

20   chemicals on the stove and heating them up to the point of detonation." *Id.* "The occupant

21   had apparently refused to open the door after multiple building security checks based on

22   the Plaintiff's report to them." *Id.* "Plaintiff was informed of the chemical explosives by

23   security after the fire[.]" *Id.*

24       According to the "emergency fire report," which Plaintiff obtained over a year later,

25   "the occupant was placed on a 5150 Psychiatric hold for danger to self and others" after

26   the incident. *Id.* at 2–3. "As per the timing and frequency of the explosions, Plaintiff

27   assumes that the occupant had additional cans of chemicals 'on deck' on the stovetop

28   burners ready to be heated up again when responders breached the apartment." *Id.* at 3. "At

1  that time the explosions were occurring every 3-4 hours, causing the Plaintiff additional

2  harm and distress once the effects had begun to wear off from the previous impact." *Id.*

3      "Approximately [one] month after the fire, the explosions started again and Plaintiff

4  once again contacted 911 emergency, this time informing them of the previous fire

5  incident." *Id.* "Plaintiff was again asked if there was a fire." *Id.* "[I]t appeared that [p]olice

6  had no knowledge of the prior incidents, despite approximately 10-12 reports having been

7  made over the past 5 weeks." *Id.* "During the [p]olice interaction Plaintiff informed them

8  of the prior history," that "improved explosive devices were found in the last fire incident,"

9  and "that the occupant had already been apprehended on a 5150 Psychiatric hold." *Id.*

10  Police responded by stating "that there was no record of any prior arrest or apprehension

11  of the occupant for the fire incident." *Id.* "This was during the Black Lives Matter protests

12  and Plaintiff received the impression that there was some bias going on in that the

13  individual living in the unit below was a black individual[.]" *Id.* "Plaintiff ended up having

14  to move out of his residence to protect himself[.]" *Id.* "As a result of these issues, Plaintiff

15  has suffered a Traumatic Brain Injury and suffers frequent seizures that have not subsided

16  after [three] years since the initial incidents." *Id.* at 9.

17      Plaintiff filed a claim with San Diego Risk Management, which was denied. Plaintiff

18  then filed a Complaint in San Diego Superior Court, and the government filed a demurrer

19  on the ground that it was immune. "During this time, some of the case information in a

20  similar case, called 'Heitmann vs. City of San Diego' was made public in the local news,

21  stating that the Plaintiffs in (Heitmann) were accusing the City of San Diego of

22  [n]egligence due to the fact that they 'did not take all information into account' … when

23  they were asked to place (Heitmann) on a 5150." *Id.* at 5. "San Diego Superior Court found

24  in favor of the Plaintiff and overruled the City of San Diego's [d]emurrer." *Id.* "[T]he

25  specific statutes that were cited in the Heitmann media news article … were later redacted

26  and[/]or removed from the internet." *Id.* at 6. "Despite this, San Diego Superior Court

27  sustained the demurrer in Plaintiff's case[.]" *Id.* at 7. "By sustaining the demurrer in Burke

28  vs. City of San Diego … and overruling the demurrer in Heitmann vs. City of San Diego

…, San Diego Superior Court has violated Plaintiff Burke's Constitutionally granted civil right to equal protection under the law." *Id.* at 8.

Plaintiff appears to bring claims against the San Diego Superior Court, Judge Gregory Pollack,[1] the City of San Diego, the State of California, and the United States of America. Plaintiff brings claims pursuant to Cal. Gov't Code § 815.6 and the Equal Protection Clause. Plaintiff seeks unlimited damages "as relief for his diminished quality of life, and future potential earnings." *Id.* at 15.

**C. Discussion**

 **1. Federal Law Claims**

42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001); *see* 42 U.S.C. § 1983 (providing a cause of action against [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws...."). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating

---

[1] Plaintiff only names the City of San Diego, State of California, and the United States of America as Defendants in the caption of the Complaint, but includes references to the San Diego Superior Court and Judge Pollack in the body of the Complaint. Federal Rule of Civil Procedure 10 requires a plaintiff to name all defendants in the caption of the complaint. Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties."). "[A] party may be properly in a case if the allegations in the body of the complaint make it plain that the party is intended as a defendant." *Rice v. Hamilton Air Force Base Commissary*, 720 F.2d 1082, 1085 (9th Cir. 1983) (citation omitted). Given the Court's obligation to construe pro se pleadings liberally, the Court interprets the Complaint as alleging claims against the San Diego Superior Court and Judge Pollack.

24-cv-00182-WQH-DTF

1  federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989)

2  (quotations and citations omitted).

3      Plaintiff alleges that the San Diego Superior Court and Judge Pollack violated his

4  right to equal protection when Judge Pollack "found in favor of the Heitmann Plaintiff in

5  over[r]uling the City of San Diego [d]emurrer while sustaining the City of San Diego's

6  demurrer in Plaintiff's case." (ECF No. 1 at 11.) "It is well established that state judges are

7  entitled to absolute immunity for their judicial acts." *Swift v. California*, 384 F.3d 1184,

8  1188 (9th Cir. 2004) (citing *Pierson v. Ray*, 386 U.S. 547, 553–55 (1967)). Judicial

9  immunity can only be overcome in two circumstances. *Mireles v. Waco*, 502 U.S. 9, 11–

10  12 (1991) (citations omitted). "First, a judge is not immune for liability for nonjudicial

11  actions." *Id.* To determine whether an action is judicial, a court must look to "the nature of

12  the act itself," i.e., "whether it is a function normally performed by a judge" and "whether

13  [the parties] dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S.

14  349, 362 (1978). "Second, a judge is not immune from actions, though judicial in nature,

15  taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 12. However, "[a]

16  judge will not be deprived of immunity because the action he took was in error, was done

17  maliciously, or was in excess of his authority." *Stump*, 435 U.S. at 356. "[T]he scope of the

18  judge's jurisdiction must be construed broadly." *Id.*

19      Here, Plaintiff asserts an equal protection claim against the San Diego Superior

20  Court and Judge Pollack based on Judge Pollack's decision to sustain the government's

21  demurrer in Plaintiff's case in the San Diego Superior Court. Judge Pollack's actions are

22  normal judicial functions undertaken in state court proceedings and arose from interactions

23  with Plaintiff in state court. Plaintiff challenges actions which are judicial in nature and

24  taken within the jurisdiction of the California state courts. Therefore, Plaintiff's claims for

25  money damages against the San Diego Superior Court and Judge Pollack must be dismissed

26  sua sponte pursuant to 28 U.S.C. § 1915A(b)(2) due to their absolute immunity. *See Chavez*

27  *v. Robinson*, 817 F.3d 1162, 1167–68 (9th Cir. 2016) (noting that 28 U.S.C.

28

24-cv-00182-WQH-DTF

1 § 1915(e)(2)(B)(iii) requires the court to dismiss an action "at any time" if it "seeks

2 monetary relief from a defendant who is immune from such relief").

3      Additionally, the Eleventh Amendment prohibits suits for damages or injunctive

4 relief against the state brought in federal court, unless the state has waived its immunity or

5 Congress has specifically overridden sovereign immunity. *See Will v. Mich. Dep't of State*

6 *Police*, 491 U.S. 58, 70 (1989) (holding that "'arms of the State' for Eleventh Amendment

7 purposes" are not liable under § 1983). The Eleventh Amendment bars a § 1983 damages

8 claim against a county's superior court because it is considered an arm of the state for

9 Eleventh Amendment purposes. *See Greater L.A. Council on Deafness, Inc. v. Zolin*, 812

10 F.2d 1103, 1110 (9th Cir. 1987); *Simmons v. Sacramento Cnty. Superior Court*, 318 F.3d

11 1156, 1161 (9th Cir. 2003) ("Plaintiff cannot state a claim against the Sacramento County

12 Superior Court (or its employees), because such suits are barred by the Eleventh

13 Amendment."). Thus, the Eleventh Amendment additionally bars suit under § 1983 against

14 the San Diego Superior Court.

15      To the extent Plaintiff brings an equal protection claim against the State of

16 California, this claim is also barred by the Eleventh Amendment. "The State of California

17 has not waived its Eleventh Amendment immunity with respect to claims brought under

18 § 1983 in federal court, and the Supreme Court has held that § 1983 was not intended to

19 abrogate a State's Eleventh Amendment immunity." *Dittman v. California*, 191 F.3d 1020,

20 1025–26 (9th Cir. 1999) (internal citations and quotation marks omitted).

21      To the extent Plaintiff brings a substantive due process claim against the City of San

22 Diego based on its failure to protect Plaintiff from harm, Plaintiff fails to state a claim.

23 Although the Eleventh Amendment bars a § 1983 damages claim against the state, it does

24 not bar suits against cities or similar municipal entities. *See Mt. Healthy Sch. Dist. Bd. of*

25 *Educ. v. Doyle*, 429 U.S. 274, 280 (1977); *see also Zolin*, 812 F.2d at 1110 (holding that

26 the Eleventh Amendment did not bar the action against the county even though it barred

27 action against the county's superior court as an arm of the state). A municipal entity is

28 liable under § 1983 only if "a policy, practice, or custom of the entity can be shown to be

1   a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*,

2   654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694

3   (1978)); *see Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("The custom must be so

4   'persistent and widespread' that it constitutes a 'permanent and well settled city policy.' …

5   Liability for improper custom may not be predicated on isolated or sporadic incidents; it

6   must be founded upon practices of sufficient duration, frequency and consistency that the

7   conduct has become a traditional method of carrying out policy." (quoting *Monell*, 436

8   U.S. at 691)). Here, Plaintiff does not allege that a policy, practice, or custom was a

9   "moving force" in the alleged constitutional injuries. Plaintiff fails to assert in the

10  Complaint that the City's alleged failure to protect Plaintiff was pursuant to a "policy,

11  practice, or custom" that was "so 'persistent and widespread' that it constitutes a

12  'permanent and well settled city policy.'" *Trevino*, 99 F.3d at 918 (citation omitted). The

13  Court finds that Plaintiff fails to state a claim for relief for municipal liability under § 1983

14  against the City of San Diego.

15      To the extent Plaintiff brings an equal protection or due process claim against the

16  United States, Plaintiff must state a claim pursuant to *Bivens v. Six Unknown Named Agents*

17  *of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Under *Bivens* and its progeny, in

18  limited situations which do not appear to be present here, federal actors may be sued for

19  damages in their individual capacities to remedy violations of certain constitutional rights.

20  *See, e.g., id.* at 397 (creating the cause of action for Fourth Amendment violations); *Davis*

21  *v. Passman*, 442 U.S. 228, 230–31 (1979) (extending the *Bivens* remedy to violations of

22  the Fifth Amendment Due Process Clause); *Carlson v. Green*, 446 U.S. 14, 16–18 (1980)

23  (extending the *Bivens* remedy to violations of the Eighth Amendment Cruel and Unusual

24  Punishment Clause); *Egbert v. Boule*, 596 U.S. 482, 483 (2022) ("[R]ather than dispense

25  with *Bivens* altogether," the Supreme Court has "emphasized that recognizing a cause of

26  action under *Bivens* is 'a disfavored judicial activity.'"). Plaintiff does not allege any facts

27  as to how the United States or its employees violated Plaintiff's substantive due process or

28  equal protection rights.

Accordingly, Plaintiff's federal claims are sua sponte dismissed without prejudice for failure to state a claim on which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### 2. State Law Claims

Plaintiff additionally brings a state law claim pursuant to Cal. Gov't Code § 815.6. The federal supplemental jurisdiction statute provides:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction...." 28 U.S.C. § 1367(c)(3). Because the Court has found none of Plaintiff's federal claims adequately state a plausible federal claim for relief, it declines to exercise supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367(c).

## V. LEAVE TO AMEND

As discussed, the Court sua sponte dismisses the federal law claims pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), and declines to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c). Because Plaintiff is proceeding pro se, the Court, having provided him "notice of the deficiencies in his complaint," will grant him another chance to fix them. *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)). Plaintiff is also reminded that an amended complaint must be a complete document in and of itself. *See* S.D. Cal. CivLR 15.1(a) (stating that an amended pleading "must be complete in itself without reference to the superseded pleading").

///

///

## VI.   CONCLUSION

IT IS HEREBY ORDERED that the Application to Proceed IFP (ECF No. 6) is granted.

IT IS FURTHER ORDERED that the Request for Appointment of Counsel (ECF No. 3) is denied without prejudice.

IT IS FURTHER ORDERED that the Complaint is sua sponte dismissed without prejudice. No later than thirty (30) days from the date of this Order, Plaintiff may file an amended complaint. If no amended complaint is filed, the Court will order the Clerk of the Court to close this case.

Dated:  July 1, 2024

Hon. William Q. Hayes
United States District Court

24-cv-00182-WQH-DTF